UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALEXA CHACON,

      Plaintiff,

v.                                                              Case No:  6:12-cv-895-Orl-37TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

### REPORT AND RECOMMENDATION[1]

      Plaintiff Alexa Chacon brings this action pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") after April 17, 2008 and her claim for supplemental security income ("SSI").  I have reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties.  For the reasons that follow, I respectfully recommend that the Commissioner's final decision in this case be **reversed and remanded.**

## I. Background

      A. Procedural History

_____

[1] Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

On June 14, 2007, Plaintiff applied for DIB based upon a June 4, 2006 onset date. (Tr. 15).  The Commissioner denied Plaintiff's claim on August 3, 2007.  (Id.).

On August 3, 2009, Plaintiff submitted a new application for DIB and on November 6, 2009, she filed an application for SSI.  (Tr. 33).  Both applications alleged that her disability began June 4, 2006.  (Id.).  Plaintiff's claims were denied initially and after reconsideration.  (Id.).  She requested an administrative hearing which was held on November 10, 2010.  (Id.).  Following the hearing, the ALJ issued a partially favorable opinion finding Plaintiff was disabled from June 4, 2006 through April 17, 2008.  (Tr. 33-45).  He found that as of April 18, 2008, Plaintiff had medically improved to the point that she was no longer disabled.  (Tr. 33-45).

Plaintiff sought review of the ALJ's decision by the Appeals Council which accepted the case.  (Tr. 14-16).  It also found that Plaintiff became disabled on June 4, 2006 and her disability ended on April 18, 2008.  (Id.).  While the Appeals Council agreed with the ALJ that Plaintiff was disabled during this period of time, it held that the ALJ committed an error of law which prevented the implementation of his decision.  (Tr. 15).  The Appeals Council cited 20 C.F.R. § 404.31 5(a)3 for the proposition that a claimant is entitled to benefits while disabled if the claimant had a disability that ended within the twelve month period before the month in which the claimant applied for benefits.  (Id.).  Plaintiff submitted her application more than one year before she became disabled and therefore, the Appeals Council held that the ALJ's decision could not be effectuated. (Id.).  But, the Appeals Council reopened the August 3, 2007 denial of Plaintiffs' original application for DIB based upon new and material evidence and found that she was entitled to DIB under the provisions of 20 C.F.R. § 414.315.  (Tr. 16).   The Appeals

Council's decision is the final decision of the Commissioner.  Plaintiff filed this action for judicial review on June 13, 2012.  (Doc. 1).

Plaintiff has exhausted all of her available administrative remedies and timely filed this action.  The case is properly before this Court, which has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

B. Relevant Medical History

In or about 2000, Plaintiff was diagnosed with a congenital hip disease and received a primary right hip replacement including a cemented femoral and non-cemented acetabular prosthesis. (Tr. 38).  On June 4, 2006, she was working as a custodian at the University of Central Florida when she fell and fractured her right hip. (Tr. 67, 278).  She developed aseptic loosening of her cemented right hip replacement prosthesis and on November 30, 2006, she was admitted to Orlando Regional Healthcare where doctors found that her proximal femur required intraoperative bone grafting.  (Tr. 435).  She was treated, placed on no-work status, and discharged from the hospital. (Tr. 277, 427).

Plaintiff had a follow up appointment with her surgeon, Jeffrey P. Rosen, M.D. on December 18, 2006.  (Tr. 426-428).  Dr. Rosen noted that she was "doing fairly well" but she had not reached maximum medical improvement and he continued her no-work status.  (Tr. 427-428).  When she saw Dr. Rosen again on January 8, 2007 he opined that she could progress to full weight bearing as tolerated.  (Tr. 427).  On February 5, 2007 Plaintiff returned to Dr. Rosen with complaints about "a fair amount of muscle and thigh pain."  (Tr. 429).  The doctor found that she was "progressing slowly."  (Id.).  During a

March 5, 2007 visit, Plaintiff told Dr. Rosen her pain was improving but she was experiencing a great deal of weakness in her right lower extremity.  (Tr. 430).

During an April 3, 2007 visit to Dr. Rosen, Plaintiff continued "to complain of a great deal more discomfort," and Dr. Rosen observed that she was "progressing much more slowly that many patients do following hip replacement surgery or even revision hip replacement surgery." (Tr. 431).   X-rays of Plaintiff were taken which, according to Dr. Rosen, "look[ed] perfect." (Id.).  He noted that: "All prosthetic components, bone grafts, etc. maintain perfect position and alignment.  The hip prosthesis is stable and well located within the joint without any evidence of instability." (Id.).  Plaintiff continued to complain about pain but she declined Dr. Rosen's offer of pain medication.  (Id.).

Plaintiff saw Dr. Rosen again on May 1, 2007.  (Tr. 432).  She was still complaining about a great deal of pain in her thigh and groin and he observed that "her progress has been atypically, excruciatingly slow." (Id.).  Additional x-rays continued "to reveal excellent integrity and stability of the prosthetic components." (Id.).  Dr. Rosen found no evidence of loosening, osteolysis, or infection clinically or radiographically.  (Id.).

Plaintiff's next office visit with Dr. Rosen was on June 5, 2007.  (Tr. 433).  She reported doing worse than before and he concluded "that from an orthopedic surgical standpoint, she has reached a point of maximum medical improvement." (Tr. 433-34).  An MRI scan showed no significant pathology around her hip.  (Id.). It did show some evidence of a slight stress reaction of femur just distal to the tip of the prosthesis which Dr. Rosen said was to be expected.  (Id.).  Plaintiff's x-rays looked "excellent," her EMG study was "completely normal," and there was no evidence of femoral or sciatic neuropathy.  (Id.).  Dr. Rosen wrote that he was "unable to explain her persistent post-op pain and her very poor rehab progress on any objective pathology." (Tr. 434).  From an

orthopedic standpoint, he found Plaintiff had reached maximum medical improvement and gave her a twelve percent total body permanent impairment.  (Id.).  Once again, she declined Dr. Rosen's offer of pain medication.  (Tr. 434).

When Plaintiff saw Dr. Rosen again on August 8, 2007 he found nothing had changed since her last visit.  (Tr. 435-436).  X-rays were taken and showed "perfect position and alignment of the prosthetic components about her hip."  (Tr. 436).  Dr. Rosen said he had "no explanation for her persistent and severe right lower extremity pain."  (Tr. 437).  Again, Plaintiff declined the doctor's offer of pain medication.  (Id.).

On October 8, 2007, Plaintiff met with pain management specialist Alexander C. Jungreis, M.D., for an initial evaluation.  (Tr. 581-584).  Dr. Jungreis wrote that she was "temporarily disabled pending completion of the course of treatment."  (Tr. 584).  Plaintiff returned to Dr. Jungreis for monthly follow-up appointments and she attended physical therapy sessions.  (Tr. 481- 580, 597-622).

On April 16, 2008, Plaintiff went back to Dr. Rosen, complaining of severe right lower extremity pain radiating from her back all the way down her leg.  (Tr. 438).  The doctor said he did not have an explanation for her continued pain and said he had nothing further to offer.  (Id.).

When Plaintiff saw Dr. Jungreis on April 17, 2008 she reported a fifty percent improvement in her pain when she took her medication.  (Tr. 547).  Dr. Jungreis examined Plaintiff and rated her at maximum medical improvement with a whole body impairment rating of twelve percent (five percent lumbar spine and seven percent hip).  (Tr. 547-550).  He also changed Plaintiff's work status to full time light duty work.  (Id.).

Plaintiff had another appointment with Dr. Rosen on January 28, 2009.  (Tr. 439-443).  Dr. Rosen noted that she "never did well" following her hip surgery and she

continued to complain of constant severe hip pain. (Tr. 439-440).  He observed that she had been under the care of a pain management doctor and that numerous pain management techniques had failed to relieve her pain. (Tr. 440- 441).  On physical examination of Plaintiff's range of motion Dr. Rosen found discomfort in her hip and groin region, as well as in her trochanteric region.  (Tr. 441).  Examination of Plaintiff's lumbar spine revealed tenderness to palpation over the lower lumbar spine in the sacroiliac region.  (Id.).  Her range of motion was somewhat limited and reproduced some of her pain.  (Tr. 441-442).  Dr. Rosen's impression was chronic severe pain syndrome. (Tr. 442). He wrote:

> I have honestly indicated to the patient that I have nothing further to offer. I do not have an explanation for her pain. I cannot find any problem with her hip prosthesis. . . . I would be hesitant to consider any additional surgical intervention as this patient has done extremely poorly following her initial surgery.
>
> . . .
>
> Because of the patient's severe level of subjective pain, I believe that she remains off work at this time and should be considered totally and permanently disabled. I have nothing further to offer her. With regard to further treatment, I suggest that ongoing pain management is the only thing that I can suggest. I understand that this has not been successful, but I do not see that there is any other alternative.

(Tr. 442-443).

## II. The ALJ's Decision

In determining whether an individual is disabled, the ALJ must follow the five step sequential evaluation process found at 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P,

Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four; at step five the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application.  (Tr. 37).  At step two, the ALJ decided that she was severely impaired by "status post right hip arthroplasty, L5-S1 and T12-L1 disc protrusion, and arthritis of the knees," (Id.), but he said she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  (Id.; Tr. 41).  The ALJ found that from June 4, 2006 through April 17, 2008, Plaintiff had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(b).  (Tr. 38).  The ALJ said that during this period Plaintiff was unable to perform any of her past work, or, as the vocational expert testified, any other job that exists in significant numbers in the national economy.  (Tr. 40). Accordingly, the ALJ found Plaintiff disabled from June 4, 2006 through April 17, 2008. (Tr. 41).

For the period after April 17, 2008, the ALJ applied the specific evaluation process used to determine whether a claimant's disability has ceased.  (Tr. 41-45); see 20 C.F.R. §§ 404.1594(b)(5), 416.994(b)(5).  The ALJ found Plaintiff's conditions were still severe impairments which did not meet or equal any listed impairment. (Tr. 41); see 20 C.F.R. §§ 404.1594(b)(5)(v), 416.994(b)(5)(v).  But, the ALJ also found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and

416.967(b) so long as she was limited to standing and/or walking up to two hours in an eight-hour workday; sitting up to six hours in an eight-hour workday; occasional climbing stairs, balancing, stooping, kneeling, or crouching; never crawling or climbing ladders, ropes or scaffolds; avoiding  concentrated exposure to hazards (including dangerous machinery and unprotected heights); and avoiding concentrated exposure to extreme change in temperatures.  (Tr. 42); <u>see</u> 20 C.F.R. §§ 404.1594(b)(5)(vi), 416.994(b)(5)(vi).

Based upon this finding, and after considering Plaintiff's age, education and work experience, the ALJ concluded that Plaintiff's functional capacity for basic work activities had increased.  (Tr. 44).  The ALJ decided that Plaintiff remained incapable of performing any past relevant work, (<u>Id.</u>), but, relying on the testimony of the vocational expert, the ALJ concluded that given Plaintiff's age, education, work experience and residual functional capacity after April 18, 2008, she would be able to perform jobs existing in significant numbers in the national economy, including ticket seller, cashier, and surveillance system monitor. (Tr. 44-45); <u>see</u> 20 C.F.R. §§ 404.1594(b)(5)(vi), (vii), 416.994(b)(5)(vi), (vii). Therefore, the ALJ determined Plaintiff was not disabled beginning April 18, 2008.  (Tr. 45).

## III. Standard  of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.  <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158 (11th Cir. 2004).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance.  It is such relevant evidence that a reasonable person would accept as

adequate to support a conclusion." <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" <u>Id.</u> "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); <u>accord</u> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

There is a presumption in favor of the ALJ's findings of fact but no such presumption attaches to the ALJ's conclusions of law. <u>Welch v. Bowen</u>, 854 F.2d 436, 438 (11th Cir. 1988) (per curiam). The Court will reverse a final decision if the ALJ incorrectly applied the law or failed to provide sufficient reasoning for the Court to determine whether the ALJ properly applied the law. <u>Keeton v. Dep't of Health & Human Serv's</u>, 21 F.3d 1064, 1066 (11th Cir. 1992). When it reviews a final decision, the Court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

## IV. Discussion

Plaintiff complains that the ALJ and the Appeals Council failed to consider Dr. Rosen's opinions. As evidence, Plaintiff notes that the ALJ never even mentioned Dr. Rosen by name. While this is true, the ALJ did discuss Plaintiff's "orthopedist," and was

clearly referring to Dr. Rosen and his reports when the ALJ talked about Plaintiff's doctor. (Tr. 38-39).

Plaintiff alleges that both the ALJ and the Appeals Counsel ignored and improperly gave no weight to Dr. Rosen's January 28, 2009 opinion that due to her ongoing pain, Plaintiff is "totally and permanently disabled." (Tr. 442-443). The ALJ did mention the report in which this finding appears, but the ALJ never discussed the specific finding. (Tr. 43). An ALJ must explain with particularity the weight he gives different medical opinions. McCloud v. Barnhart, 166 F. App'x 410, 418 (11th Cir. 2006) (citing Sharfaz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). A treating physician's opinion on the nature and severity of a claimant's impairments is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §404.1527(d)(2). If the ALJ does not afford controlling weight to a medical opinion, the ALJ will determine what weight to afford the medical opinion by performing the analysis listed in 20 C.F.R. § 404.1527(c).

Purely legal conclusions by a physician are not medical opinions. Instead, they are opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case. 20 C.F.R. §§ 404.1527(d)(1); see also Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) ("We note that we are concerned here with the doctors' evaluations of Lewis's condition and the medical consequences thereof, not their opinions of the legal consequences of his condition."). Nevertheless, opinions by physicians on issues reserved to the Commissioner "must never be ignored," but must be

evaluated in accordance with 20 C.F.R. § 404.1527(d).  SSR 96-5p, 1996 WL 374183 at *3.

The ALJ failed to discuss Dr. Rosen's opinion that Plaintiff "should be considered totally and permanently disabled." (Tr. 43).  The doctor's opinion is a legal conclusion arrived at based on Plaintiff's subjective complaints about pain.  See 20 C.F.R. § 404.1527(d)(1) (noting that medical opinion that a claimant is disabled is not a medical opinion of the sort listed in §404.1527(a)(2)).  It is also inconsistent with Dr. Rosen's objective medical findings.  Nevertheless, the ALJ was required to consider Dr. Rosen's opinion pursuant to 20 C.F.R. § 404.1527(d) and SSR 96-5P, 1996 WL 374183 (S.S.A.).  The Commissioner has clearly stated that the ALJ "must always carefully consider medical source opinions about any issue, including opinions about issues reserved to the Commissioner." Id. * 2.  While Dr. Rosen's opinion that Plaintiff is totally disabled is not entitled to controlling weight or special significance, the ALJ could not ignore it.  Id.  The ALJ should have evaluated Dr. Rosen's opinion that Plaintiff is totally disabled and determine the extent to which the opinion is supported by the record.  Id.  Here, the ALJ failed to follow the Commissioner's own policy on the consideration of medical source opinions.  And, because the ALJ failed to evaluate Dr. Rosen's opinion, the Court cannot be sure that the ALJ performed the proper analysis.  See SSR 96-5p, 1996 WL 374183 at *3; Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (holding that remand was appropriate when the ALJ only referenced the treating physician's opinion, leaving the court with no understanding whether the ALJ fully considered the opinion).

The Appeals Council is subject to the same rules for considering opinion evidence as the ALJ.  See 20 C.F.R. 404.1527(e)(3).  It also failed to discuss Dr. Rosen's opinion that Plaintiff is totally disabled.  Accordingly, I recommend the Court find that the ALJ and

Appeals Council both failed to apply the proper legal standard and that remand is appropriate. Because remand is required, it is unnecessary to analyze Plaintiff's remaining objections to the ALJ and Appeals Council's decisions. <u>Freese v. Astrue</u>, No.8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. April 18, 2008) (citing <u>Jackson v. Bowen</u>, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991)).

## VI. Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. The Commissioner's final decision in this case be **REVERSED and REMANDED** for further proceedings consistent with the findings in this report.

2. The Clerk be directed to enter judgment and **CLOSE** the file.

3. Plaintiff be advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

4. Plaintiff be directed that upon receipt of such notice, she shall promptly email Mr. Rudy and the OGC attorney who prepared the Government's brief to advise that the notice has been received.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on August 19, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record